# UNITED STATES DISTRICT COURT

## DISTRICT OF CONNECTICUT

```
************************
                       *
SHELDON ROBINSON       *
                       *
        Plaintiff      *
                       *
                       *
vs.                    *  CIVIL NO. 3:02-CV432(JCH)
                       *
                       *
CITY OF SUFFIELD,      *
MARK LEAHY,            *
ROBERT WILLIAMS        *
DAVID REESE            *
                       *
                       *
        Defendants     *
                       *
***********************    FEBRUARY 16, 2004
```

## PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

The plaintiff opposes Defendant's Motion for Summary Judgment and submits the following memorandum in opposition of the Defendants' Motion for Summary Judgment in support thereof.

THE PLAINTIFF

BY *Wendi Doolittle Kowarik*

Wendi Doolittle Kowarik, Esq.
Ct 09996
P.O. Box 820
Derby, CT 06418
(203)734-1346

## CERTIFICATION

I hereby certify that a copy of the foregoing was mailed, postage prepaid, on the date hereon to:

Michael C. Deakin, Esq.
525 Bridgeport Avenue
Shelton, CT 06484

Edward G. McAnaney, Esq.
McAnaney & McAnaney
Suffield Village
Suffield, CT 06078

*Wendi D Kowarik*

Wendi D. Kowarik

## UNITED STATES DISTRICT COURT

## DISTRICT OF CONNECTICUT

```
***********************
                      *
SHELDON ROBINSON      *
                      *
      Plaintiff       *
                      *
                      *
vs.                   *   CIVIL NO. 3:02-CV432(JCH)
                      *
                      *
CITY OF SUFFIELD,     *
MARK LEAHY,           *
ROBERT WILLIAMS       *
DAVID REESE           *
                      *
                      *
      Defendants      *
                      *
***********************      FEBRUARY 16, 2004
```

### PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

### I.     Facts:

The defendant's statement of the facts is essentially correct.

On or about October 10, 1998, Sheldon Robinson was arrested in

McKinney, Texas as an accessory to attempted kidnapping, accessory

to attempted custodial interference, conspiracy to kidnapping and conspiracy to custodial interference. The charges stemmed from a two-year investigation beginning with the arrest of James "Bo" Gritz in the parking lot of the McAlister Middle School in Suffield.

On or about September 30, 1996, Defendant Officer Reese received a report of a suspicious red pick-up truck in the parking lot of Spaulding Elementary School in Suffield. After investigating at the Spaulding School and finding no evidence of wrongdoing, Defendant Officer Reese went to McAlister Middle School to look for the reported red truck. Defendant Officer Reese found, instead, two men in a small blue car. He asked the men to get out of the car and placed those men (James "Bo" Gritz and his son, James G. Gritz) under arrest for attempted kidnapping and attempted custodial interference of two minor children who had been the subject of a custody dispute between their mother, Linda Weigand, and father, Thomas Wilkinson.

Defendant Officer Reese searched the car and found a set of

papers relating to the McAlister school schedules and papers relating to the custody dispute between Weigand and Wilkinson.

Soon after the arrest of the Gritz's, Defendant Officer Reese determined that they were staying at various area hotels with the plaintiff herein, Sheldon Robinson. He determined that the plaintiff paid for the rooms for the Gritz's and that the plaintiff flew them to Connecticut in a small plane owned by defendant's father's business.

In May 1997, the defendants submitted an application for an arrest warrant for the plaintiff, Sheldon Robinson. That warrant was not signed.

In July 1997, at the request of the defendant, the FBI, in Dallas, Texas, questioned the plaintiff regarding his activities in Connecticut during the last week of September 1996. The plaintiff informed the FBI, and they confirmed, that he was a medical device salesman; that he met James "Bo" Gritz in Tennessee and flew him to Connecticut so that Mr. Gritz could broadcast his radio show; that the radio show advertising attracted so much interest from the New

England area that the plaintiff began to think about moving from Texas; that he investigated some of the area schools as he was the father of three boys who were being home-schooled; and that, of course, he paid for the rooms for Mr. Gritz as he was getting free radio advertising time in exchange. The FBI confirmed all that the plaintiff told them and so informed the defendants.

Despite the FBI reports and explanations by the plaintiff, the defendants drafted and submitted another arrest warrant application seeking the plaintiff's arrest. It alleged no new facts not previously alleged in the prior warrant. It, too, was not signed.

In August, 1998, again alleging the same facts as those alleged in the May 1997 warrant, the defendants submitted another arrest warrant. The final arrest warrant was signed in October 1998 (two years after the initial arrest of the Gritz's and a year and a half after the plaintiff had spoken with the FBI).

The State of Connecticut tried the plaintiff and James "Bo"

Gritz and, on March 8, 2000, a jury acquitted the defendants on all counts.

## II.    Issues:

A.  WHETHER AN ARREST WARRANT ISSUED ON THE BASIS OF LIES AND INTENTIONAL MISREPRESENTATIONS PRECLUDES A CLAIM OF FALSE ARREST.

B.  WHETHER QUALIFIED IMMUNITY APPLIES TO POLICE OFFICERS WHO KNOWINGLY AND INTENTIONALLY AND WITH RECKLESS DISREGARD FOR THE TRUTH MAKE FALSE STATEMENTS IN AN AFFIDAVIT FOR AN ARREST WARRANT.

C.  WHETHER IT "SHOCKS THE CONSCIENCE" THAT A POLICE OFFICER WOULD LIE AND INTENTIONALLY MISREPRESENT THE TRUTH JUST TO GET A JUDGE TO SIGN AN ARREST WARRANT

D.  WHETHER A POLICE SUPERVISOR'S INDIFFERENCE TO THE PLAINTIFF'S CONSTITUTIONAL RIGHTS IN FAILING TO SUPERVISE AND INVESTIGATE AND TRAIN POLICE OFFICERS IN THE APPROPRIATE MANNER OF APPLYING FOR ARREST WARRANTS PROTECTS THE SUPERVISORS AGAINST CLAIMS AGAINST THEM.

E.  WHETHER THE PLAINTIFF IS ENTITLED TO PROCEED ON A CLAIM OF INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS WHERE THE DEFENDANTS' CONDUCT IS EXTREME AND OUTRAGEOUS

## III. Statement of the Law

### A. WHETHER AN ARREST WARRANT ISSUED ON THE BASIS OF LIES AND INTENTIONAL MISREPRESENTATIONS PRECLUDES A CLAIM OF FALSE ARREST

All the issues can be summarized in one question.  Is an arrest warrant that is based on material lies and intentional misrepresentations protect the defendants from claims under §1983?

As defendant points out, the plaintiff has a heavy burden in overturning an arrest warrant and must demonstrate that the arresting officer acted with reckless disregard for the truth in submitting the probable cause affidavit.  <u>Soares v. State of Conn</u>, 8 F.3d 917 (2nd Cir., 1993).

"A warrant, however, does not erect an impenetrable barrier to a claim of wrongful arrest... If a plaintiff is able to show (1) that the warrant was obtained on the basis of information that was known to be false when presented to the issuing magistrate or

that the affiant officer would have known to be false had he not
recklessly disregarded the truth and (2) that the allegedly false
statements were 'necessary to the finding of probable cause'
Franks v. Delaware, 438 U.S. 154, 155-156, 98 S.Ct. 2674,
2676, 57 L.Ed.2d 667 (1978), the defendants are not entitled to
the defense of qualified immunity.  Golino v. city of New Haven,
950 F.2d 864, 870-71 (1991).

Proof of intentional or reckless omissions of material
information, like false statements, may defeat the defense of
qualified immunity.  Id at 871 ('Where an officer knows, or has
reason to know, that he has materially misled a magistrate on
the basis for a finding of probable cause, the shield of immunity
is lost.')...."

LoSacco v. City of Middletown, 822 F.Supp.2d 870 (1993).

The facts, here, show, unequivocally that Officer Reese acted
with "reckless disregard for the truth."  Officer Reese arrested James
G. Bo Gritz and James R. Gritz in October 1996.   He drafted an arrest
warrant against the plaintiff first in May 1997 (seven months later).
The warrant went unsigned and/or unpresented.

Officer Reese and the Chief of Police then requested that the
FBI interview the plaintiff.

The FBI conducted the plaintiff's interview in July 1997. From the FBI interview, Officer Reese learned the exact type of aircraft used by the plaintiff. He learned that the plaintiff had three children, two of whom were middle-school aged. He learned that the plaintiff was in Connecticut to promote a medical device. He learned that the plane Mr. Robinson was accused of flying into AMR Combs "for a getaway" was not there. He learned that the list of planes claimed to have been sited at AMR Combs was not accurate.

Despite the contradictory information received by Officer Reese and the then Chief of Police, in July 1997, Officer Reese again drafted an arrest warrant application against the plaintiff. This warrant, while more extensive, contained no additional information from the information contained in the first warrant application. Despite the new information gained from the FBI, not a single erroneous allegation was changed in the July 1997 application. Again the application was not signed.

In August 1998, over a year later and almost two years from the date of the arrest of the Gritz', Officer Reese resubmitted the July 1997 arrest warrant application.

Even though Officer Reese knew, after two years of investigating the situation, that some of the information in the arrest warrant was false, he submitted the application to a Connecticut Superior Court Judge. He swore to the truth of the facts, knowing that the facts were not entirely true and accurate. He intentionally left in the warrant that Mr. Robinson had "no known children in the McKinney School District" knowing that the statement, while technically accurate, was misleading. Instead of swearing that Mr. Robinson had children who were home-schooled (as he learned from the FBI), he let the misleading information on the children remain in the warrant. What Judge, who did not know the facts of this case, would read that statement and believe that Mr. Robinson had any children at all? And, if he had no children, he had no reason to visit the McAllister School. On the other hand, if he had middle-school aged children, there might,

then, be a legitimate reason for him to be at that school. And, probable cause would not have been as easy to prove.

After two years of investigating, and three re-writes of the arrest warrant application, what other possible reason would Officer Reese have to leave the statement of "no other known children" in the arrest warrant but to mislead the judge? Officer Reese knew that fact was a material fact or he would have changed it to completely reflect the truth or removed it completely from the warrant. Leaving it in was a deliberate act of untruthfulness designed only to mislead the Judge.

As to the defendants' claim that the other allegations were equally immaterial, again, if the allegations were so nonessential to the arrest warrant, why would Officer Reese leave them in an arrest warrant but to intentionally mislead the judge?

The officer claimed that the minor child walked past the car while the Gritz men were being arrested. He knew that was untrue as he knew that the children were picked up from school everyday. The

Suffield Police Department knew the state of the custody dispute between the children's parents. The entire department was, as is admitted in the defendant's motion and in the application for the arrest warrant, completely briefed on the state of the custody dispute between the children's parents. Every office in the department knew that the father, the custodial parent, picked up the children from school. Every officer in the department knew that the child was not taking any bus home. That Officer Reese claimed otherwise was a deliberate falsehood.

Again, whether that falsehood was material or not, it was left in the arrest warrant despite the fact that the defendant now claims that it wasn't material.

Mr. Robinson's father's plane is a normal small passenger plane. Its construction is predominantly metal. The wood and canvas is only the outer shell of the plane. Officer Reese knew that information. He investigated Mr. Robinson for two years. He knew the number of the plane, the manufacturer of the plane, the location of the plane, the

construction of the plane.  He knew that the only plane that could "avoid radar" was owned by the US Government and is known as a "stealth" plane.  Yet, he included that Mr. Robinson's plane was made of wood and canvas "so as to avoid radar" in the arrest warrant application.

That information, again, was intentionally false and misleading and included in the arrest warrant as a material fact to induce the judge to find probable cause.

Finally, Officer Reese swore, in the arrest warrant application, under oath, that Mr. Robinson's plane was at AMR Combs, the nearest private airfield to the McAllister School on the day of the claimed kidnapping.  Yet again, the defendant intentionally made up facts to induce the judge to sign the arrest warrant.  After two years of investigating, Officer Reese knew that this fact was untrue, yet it was a material fact that suggested that Mr. Robinson was more involved in the claimed kidnapping plot than was accurate.

The defendant admits that where is "proof of fraud, **perjury or the misrepresentation** or falsification of evidence" the presumption that there is probable cause to issue an arrest warrant is rebutted. The defendant perjured himself in the application for the arrest warrant in swearing to the truthfulness of information he knew to be false. The misrepresentations included swearing, under oath, that the plaintiff had no known children in the McKinney school district, that his plane was made of wood and canvas, that the plane was at AMR immediately prior to the kidnapping, that the minor child walked past the car while the arrest of the Gritz's was taking place. Each of these statements were false statements, made under oath, by an individual who knew they were false. They were made with the intent to mislead the judge so that she would sign an arrest warrant.

The defendants claim that Mr. Robinson's presence with the Gritz men and Ms. Weigand (the mother of the children in question) in Connecticut was enough to justify probable cause, when coupled with his paying for the hotel rooms and some meals. That alone, however,

is not enough to arrest a father of three, transport him from Texas and put him on trial for kidnapping. It would not have been enough for Judge Wendy Susco and it shouldn't be enough now.

Furthermore, assuming that those pieces of information were all that was necessary to get an arrest warrant, why would Officer Reese have added the lies and misrepresentations? Officer Reese needed the lies and misrepresentations to convince the Judge that he had probable cause. Without the lies and misrepresentations, there was not enough cause to arrest the plaintiff.

The facts about which Officer Reese lied were material facts to the investigation and to the finding of probable cause. That Mr. Robinson was at the McAllister School prior to the arrest of the Gritz's is relevant to the issue of his involvement in the claimed conspiracy. However, should he have had a reason to be at that school, it would have been relevant to the issue of his non-involvement in the alleged conspiracy. That his plane could avoid radar certainly was relevant to the conspiracy as it allegedly showed the way out of Connecticut with

the children.  However, that his plane could not avoid radar and was not parked at the airport closest to the school, those facts would have been relevant, again, to his non-involvement in the conspiracy.  That the plaintiff was in Connecticut on business was a fact material to the reason for his being in Connecticut (also relevant to the issue of conspiracy).  The conspiracy charges against Mr. Robinson were all based on the facts about which Officer Reese lied.  The defendants can not now claim that those facts are not material.

We'll never know what Judge Susco would have done had she known the facts.  But, we do know that that's a question for the finder of fact in this matter ("The weight that a neutral magistrate would likely have given the above information...is not a legal question but rather is a question to be resolved by the finder of fact." Golino v. City of New Haven,  950 F.2d 864, 872 (2d. Cir., 1991)) and can therefore not be dismissed by a Motion for Summary Judgment.

Since the plaintiff can easily rebut the presumption of a valid arrest warrant, the claim of false arrest must survive defendant's motion for summary judgment.

### B. WHETHER QUALIFIED IMMUNITY APPLIES TO POLICE OFFICERS WHO KNOWINGLY AND INTENTIONALLY AND WITH RECKLESS DISREGARD FOR THE TRUTH MAKE FALSE STATEMENTS IN AN AFFIDAVIT FOR AN ARREST WARRANT.

The individual defendants are not entitled to qualified immunity where they do not act reasonably.

"As the Supreme Court has said, qualified immunity provides ample protection to all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986).

"In a §1983 action, it is well-settled that qualified immunity shields a defendant from personal liability for damages so long as his conduct did not violate 'clearly established statutory or constitutional rights of which a reasonable person would have known.' Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); *see also* Davis v. Scherer, 468 U.S. 183, 194 n.12 (1984) (applying standard to §1983 action). Even where a right is clearly established, a defendant may enjoy immunity if

it was objectively reasonable for the official to believe that his acts did not violate that right. *See* Anderson v. Creighton, 483 U.S. 635, 638 (1987); Frank v. Relin, 1 F.3d 1317, 1328 (2d Cir.), *cert. denied*, 114 S. Ct. 604 (1993). In order to determine whether a particular right was clearly established at the time the defendant acted, a court should consider:

> (1) whether the right in question was defined with "reasonable specificity"; (2) whether the decisional law of the Supreme Court and the applicable circuit court support the existence of the right in question; and (3) whether under preexisting law a reasonable defendant official would have understood that his or her acts were unlawful.

> Jermosen v. Smith, 945 F.2d 547, 550 (2d Cir. 1991), *cert.*

*denied*, 503 U.S. 962 (1992).

Officer Reese knowingly violated the law.  He knowingly lied

and intentionally misrepresented facts in an arrest warrant application

and then swore, under oath, to the truth of those lies and

misrepresentations.  That is clearly a knowing violation of the law.

The right is specific and constitutionally protected in that a person

should be free from arrest except upon a finding of probable cause.

("It is clearly established law that the Fourth Amendment prohibited

police seizures of persons for custodial interrogation--even brief

17

detentions falling short of arrest-- without **probable cause**. See

Dunaway v. New York, 442 U.S. 200, 206-16 (1979) (holding that

detention for custodial interrogation . . . intrudes so severely on

interests protected by the Fourth Amendment as necessarily to trigger

the traditional safeguards against illegal arrest and to require

**probable cause**); Davis v. Mississippi, 394 U.S. 721, 726-28 (1969)

(holding that the Fourth Amendment applies during the investigative,

as well as accusatory, stage); Katz v. United States, 389 U.S. 347,

358-59 (1967). The Fourteenth Amendment extends this constitutional

guarantee to searches and seizures by state officers. See Elkins v.

United States, 364 U.S. 206, 213 (1960)"). The defendants here do not

argue that Mr. Robinson had a right that was reasonably specific and

supported by Supreme Court law.

The only claim by the defendants is that any reasonable officer

would have "made a similar choice."   Coons v. Casabella, 284 F.3d

437, 441 (2d Cir., 2002).

Qualified immunity protects honest officers who make mistakes. It does not protect dishonest policemen who lie to and mislead judges so that they can obtain arrest warrants.

Officer Reese lied.  He misled the judge.  He did so after a two-year investigation.  He had ample opportunity to correct the untruths contained in the warrant.  He chose not to.  He cannot now claim qualified immunity on the basis that other reasonable officers would have done the same thing.

Nor can he now claim that probable cause existed without these facts. However, "the court must grant police officers qualified immunity when the court concludes that the only conclusion a reasonable jury could reach is that reasonable officers would disagree on the constitutionality of the seizure." Malley v. Briggs, 475 U.S. 335, 341 (1986).  Here, there is no question that reasonable officers would disagree on the constitutionality of the seizure.  Reasonable officers would know that one couldn't make up evidence in an effort to mislead

a judge into signing a warrant.  Reasonable officers would not agree

that probable cause could be obtained through the lies of such officers.

Reasonable officers would not disagree on this issue.

Reasonable officers would know that the lies and misrepresentations

told to a judge to get an arrest warrant is a violation of the law and

cannot lead to a finding of probable cause.

Therefore, these defendants are not entitled to the protections

afforded officers who make honest mistakes.  These defendants made

intentional choices and cannot now rely on the protection of qualified

immunity.

### C. WHETHER IT "SHOCKS THE CONSCIENCE" THAT A POLICE OFFICER WOULD LIE AND INTENTIONALLY MISREPRESENT THE TRUTH JUST TO GET A JUDGE TO SIGN AN ARREST WARRANT

In order to support the claim that the defendants violated the

Fifth Amendment the issue is whether the defendants' conduct "shocks

the conscience."

The Due Process guaranteed to the citizens under the Fifth

Amendment to the United States Constitution protects the citizens

against conduct that shocks the conscience of the court.  <u>Rochin v.
California,</u> 342 U.S. 165, 171 (1952).

Despite defendants bald claim that Officer Reese's conduct did
not "shock the conscience," police lying and intentionally misleading
judges does in fact "shock the conscience."

Although much of the "shocking" behavior addressed by the
court decisions is much bloodier and more flagrant than the facts
presented here, the fact that an officer lies directly to a judge so that a
man living 1000 miles away can be removed from his wife, children
and life is as shocking as the stories of officers beating civilians.

Lying and intentionally misleading judges by the police is
behavior that shocks the conscience.  The claim that there was a
violation of the plaintiff's Fifth Amendment rights must not be
dismissed merely on defendants' claim that the defendants' behavior
did not shock the conscience.

### D. WHETHER A POLICE SUPERVISOR'S INDIFFERENCE TO THE PLAINTIFF'S CONSTITUTIONAL RIGHTS IN FAILING TO SUPERVISE AND INVESTIGATE AND TRAIN POLICE OFFICERS IN THE APPROPRIATE MANNER OF APPLYING FOR ARREST WARRANTS PROTECTS THE SUPERVISORS AGAINST CLAIMS AGAINST THEM

The defendants claim that the police chiefs are not responsible for the actions of their officers. The question is whether the chiefs, who are responsible for the training and supervision of the officers, were deliberately indifferent to the plaintiff's constitutional rights and there was a causal link between the actions of the chiefs and the plaintiff's injuries.

Although a supervisor can't be held liable on a respondeat superior basis, Monell v. Dept. of Social Services, 436 U.S. 658 (1978), liability may attach where the supervisor's actions or inactions were the cause of plaintiff's injuries. See, Rizzo v. Goode, 423 U.S. 362 (1976).

Generally, the courts have not allowed claims against a supervisor even if the training and supervision were inadequate. This

case is different in that the supervisor (the then and current chiefs of police) were involved in the investigation. Both of the Chiefs knew the details of this investigation. They knew all the same information that Officer Reese knew.

Yet, they were the ones who gave Officer Reese the direct approval to submit the arrest warrant affidavit, knowing the lies and the misrepresentations.

Each of the Chiefs had the ability and necessary knowledge to prevent the untruthful warrant from being submitted. Their failure to do so cost the plaintiff his wife and children, a home and his job.

Where the chiefs of police knowingly allow a police officer directly under their training and control to submit a fraudulent arrest warrant application, they are responsible for the damages done to the plaintiff.

There is certainly a deliberate indifference to constitutional rights where the chiefs knew that a police officer would confront a situation where the facts weren't exactly what he needed them to be

in order to secure an arrest warrant.  The police department can train

its officers to use creative investigating techniques to uncover

additional facts, rather than using lies and intentionally misleading

statements to obtain an arrest warrant.  Every time that the police

officer chooses to lie in order to obtain an arrest warrant; someone

can make a claim for a constitutional violation.  Since these address

the court's requirements for a finding of failure to train (See, <u>Walker v.</u>

<u>City of New York</u>, 974 F.2d 293 (2d Cir., 1992), this Court should allow

the plaintiff to proceed on his claim against the officers in their official

capacity.

     E. **WHETHER THE PLAINTIFF IS ENTITLED TO PROCEED
ON A CLAIM OF INTENTIONAL INFLICTION OF
EMOTIONAL DISTRESS WHERE THE DEFENDANTS'
CONDUCT IS EXTREME AND OUTRAGEOUS.**

The final issue is the question of whether the behavior of the

officers is extreme and outrageous.

As is stated by the defendants, in a claim for intentional infliction of emotional distress, the court must find:

> "(1) that the actor intended to inflict emotional distress;... (2) that the conduct was extreme and outrageous;  (3) that the defendant's conduct was the cause of the plaintiff's emotional distress; and (4) that the emotional distress sustained by the plaintiff was severe." Peyton v. Ellis, 200 Conn. 243, 253 (1986).

Here it is clear that the police intended to inflict the distress as they chose to lie and misrepresent.  The conduct was obviously the cause of the plaintiff's emotional distress.  The plaintiff's distress was equally obviously severe in that plaintiff lost his life – his wife and home and good job.  The only question is whether the conduct was extreme and outrageous.

It is extreme for a police officer to lie to a judge in obtaining an arrest warrant.  If, as defendants claim, the officer's lies were immaterial to the finding of probable cause, the lies are even more extreme as they were completely unnecessary.  And it is certainly outrageous that the defendants herein would claim that the conduct of

25

the defendants was not outrageous.  It is absolutely outrageous that a

police officer would lie and intentionally misrepresent the facts to a

judge just to get an arrest warrant.  That is outrageous.  Just because

there are other behaviors that the court has determined to be

outrageous that may be more violent and/or flagrant abuses, the lies

by a police officer to a judge should, and does, amount to conduct that

is not usually tolerated by decent society.

The behaviors herein are not usually tolerated by decent society

and should not be tolerated by the legal system.

THE PLAINTIFF

BY _Wendi Doolittle Kowarik_

Wendi Doolittle Kowarik, Esq.
Ct 09996
P.O. Box 820
Derby, CT 06418
(203)734-1346

## CERTIFICATION

I hereby certify that a copy of the foregoing was mailed, postage prepaid, on the date hereon to:

Michael C. Deakin, Esq.
525 Bridgeport Avenue
Shelton, CT 06484

Edward G. McAnaney, Esq.
McAnaney & McAnaney
Suffield Village
Suffield, CT 06078

Wendi D. Kowarik

27

**UNITED STATES DISTRICT COURT**

**DISTRICT OF CONNECTICUT**

```
**************************
                         *
SHELDON ROBINSON         *
                         *
     Plaintiff           *
                         *
                         *
vs.                      *  CIVIL NO. 3:02-CV432(JCH)
                         *
                         *
CITY OF SUFFIELD,        *
MARK LEAHY,              *
ROBERT WILLIAMS          *
DAVID REESE              *
                         *
                         *
     Defendants          *
                         *
**************************   FEBRUARY 16, 2004
```

## PLAINTIFF'S LOCAL RULE 9(c)2 STATEMENT

**I. Plaintiff's Response to Defendant's Rule 9(c)1 Statement:**

    1.  Admitted.

    2.  Admitted.

    3.  Admitted.

5. Admitted.

6. The Plaintiff neither admits nor denies as the facts are beyond his knowledge and information.

7. Admitted.

8. Admitted.

9. Admitted.

10. Admitted.

11. Admitted.

12. Denied in that the radios were returned. As to the remaining allegations, the plaintiff admits.

13. Admitted.

14. Admitted.

15. Denied in that Mr. Robinson did have children known to be within the McKinney School District. As to the remaining allegations, the plaintiff admits.

16. Denied in that the plane was a Belanca and that it was made of wood and canvas construction.  As to the remaining allegations, the plaintiff admits.

17. The Plaintiff neither admits nor denies as the facts are beyond his knowledge and information.

18. Admitted.

19. Admitted.

20. Admitted.

II.  Material Facts in Dispute:

1. The plaintiff was in Connecticut during the time in question to promote sales of his medical device.

2. The defendant, Officer Reese, lied to Judge Wendy Susco in order to obtain an arrest warrant.

3. The defendant, Officer Reese, intentionally misrepresented the truth in order to obtain an arrest warrant.

4. Defendant Chief Robert Williams invented a list of planes found at AMR Combs airfield at Bradley Airport that included the plane flown by the plaintiff.

THE PLAINTIFF

BY _Wendi Doolittle Kowarik_

Wendi Doolittle Kowarik, Esq.
Ct 09996
P.O. Box 820
Derby, CT 06418
(203)734-1346

## CERTIFICATION

I hereby certify that a copy of the foregoing was mailed, postage prepaid, on the date hereon to:

Michael C. Deakin, Esq.
525 Bridgeport Avenue
Shelton, CT 06484

Edward G. McAnaney, Esq.
McAnaney & McAnaney
Suffield Village
Suffield, CT 06078

_Wendi D. Kowarik_
Wendi D. Kowarik